**AMERICAN POLICYHOLDERS'
INSURANCE COMPANY**

v.

**Gerald KYES et al.**

Supreme Judicial Court of Maine.

Argued Sept. 4, 1984.

Decided Oct. 26, 1984.

Hewes, Culley and Beals, Martica Sawin (orally), Portland, for plaintiff.

Wright & Mills, P.A., S. Peter Mills, III (orally), Hyde, Day & Ferris, William Thomas Hyde, Skowhegan, for defendants.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

NICHOLS, Justice.

The Defendants, Gerald Kyes, Violet Kyes and Michael Kyes, appeal from a decision and order entered in Superior Court (Somerset County) declaring that the Plaintiff, American Policyholders' Insurance Company, has no duty either to defend or to indemnify the Defendants in a separate personal injury action brought against them by Steven and Rejean Gilbert.

On appeal, the Defendants contend that the trial court erred in finding that the policy issued by the Plaintiff does not provide coverage. Alternatively, the Defendants argue on this appeal that they are at least entitled to a defense by the insurer. We disagree. The Defendants, by submitting the ultimate coverage issue to the trial court and trying the case solely on that issue, cannot now assert that the Plaintiff insurer has a duty at least to defend them. Moreover, we find no error in the presiding justice's conclusion that the insurance policy did not provide coverage for the incident at issue.

We affirm the judgment of the Superior Court.

This controversy arises from a shooting incident that occurred at the Breezy Acres Motel in Skowhegan on August 29, 1978. A rifle held by the Defendant, Michael Kyes, the sixteen-year old son of the Defendants, Gerald and Violet Kyes, the owners of the motel, discharged and injured Steven Gilbert.

At the time of the incident, the Kyes parents had liability insurance under a policy issued by the Plaintiff. The policy provided coverage for two Skowhegan locations from which the family operated businesses: the Breezy Acres Motel on Route 201 and a store on Madison Avenue. The Madison Avenue store is not involved in this appeal.

The Breezy Acres Motel consisted of three buildings covered for fire and liability insurance under this policy. Building No. 1 was the Kyes family residence; it also contained four motel units and the motel office. Building No. 2 contained ten more units. Building No. 3 was a linen supplies storage building. The policy named as insureds "Gerald & Violet Kyes d/b/a Breezy Acres Motel." The declarations page identified the named insured as both "individual" and "other."[1] A subsequent

---

1. Gerald and Violet Kyes were also named as insureds on two additional homeowner's policies, both issued by companies other than the Plaintiff. One of these policies covered their private residence described above, and the other covered a seasonal dwelling. Under the personal liability coverage provided by those two homeowner's policies a total of $125,000 has

clause in the policy restricted coverage to the business they were carrying on there.

The Kyeses' private residence was an integral part of the motel operation. The bookkeeping office, the guest registration office, the ice machine, and the laundry facilities for the motel were all part of the Kyeses' dwelling. Motel guests had stayed in the family bedrooms during busy times.

During the summer of 1978, Michael Kyes was an employee of the motel. Although he worked no regular hours, he performed regular duties. Michael was also "on call" to respond to the needs of guests.

During the 24-hour period preceding the shooting, Michael Keyes and Steven Gilbert had spent most of their waking hours cutting wood for their own profit and playing pool at the Gilbert home. In the late afternoon of August 29, 1978, however, they were at the Kyes home, in Michael's bedroom, preparing to go squirrel hunting. At this time, a .22 caliber rifle held by Michael Kyes accidently discharged and injured Steven Gilbert. The latter is now a permanent paraplegic.

On May 19, 1981, Steven Gilbert and his father, Rejean Gilbert, filed negligence suits against Gerald, Violet and Michael Kyes for damages arising out of the shooting. Six months later, the Plaintiff insurance company filed this complaint for declaratory judgment to determine if it had a legal obligation to defend or indemnify the Kyeses.

The insurer moved for summary judgment, which motion was denied on October 8, 1982. Three months later the case was reached for a jury-waived trial. On February 7, 1984, the Superior Court entered its order ruling that the insurer had no obligation either to defend or to indemnify the Kyeses because the policy did not provide

been paid on behalf of the Kyeses to the Gilberts in connection with the injuries sustained in this accident.

2. *See also L. Ray Packing v. Commercial Union Ins. Co.,* 469 A.2d 832, 833 (Me.1983); *Travelers*

liability coverage for the shooting. From this order the Defendants bring their appeal to this Court.

■■■ At the outset we note that in the posture of this case, the presiding justice did not err in simultaneously determining the duty to defend and the duty to indemnify. Ordinarily, of course, when an insurer challenges the extent of coverage provided by the insurance contract, the duty to defend and the duty to indemnify may be analyzed separately. *American Home Assurance Company v. Ingeneri,* 479 A.2d 897, 898 (Me.1984). Whether the insurer has a duty *to defend* is determined by comparing the allegations of the underlying complaint with the provisions of the insurance contract (which can be termed the "comparison test"). *Id.*[2] at 899. (emphasis in original). The insured is entitled to a defense if there exists any legal or factual basis, *which could be developed* at trial, that would obligate the insurer to pay under the policy. *Id.* (emphasis in original). Whether the insurer has a duty *to indemnify* depends on whether coverage actually extends to the facts established at trial; this duty generally cannot be determined prior to the trial in the underlying action. *Id.* (emphasis in original).

■■■ Although application of the comparison test will frequently produce a duty to defend, we have recognized that there are situations in which a declaratory judgment may be entered simultaneously as to both the duty to defend and the duty to pay. *American Policyholders' Insurance Company v. Cumberland Cold Storage Company,* 373 A.2d 247, 250 (Me.1977); *Ingeneri,* 479 A.2d at 899. In *Cumberland Cold Storage,* we supplied the following as examples of when a simultaneous judgment may be appropriate: when the case is based on such issues as nonpayment of a

*Indem. Co. v. Dingwell,* 414 A.2d 220, 224 (Me. 1980); *American Policyholders' Ins. Co. v. Cumberland Cold Storage Co.,* 373 A.2d 247, 249 (Me.1977).

premium, cancellation of a policy, failure to cooperate, or lack of timely notice. 373 A.2d at 250. By our decision in the case at bar, however, we do not expand this list of appropriate instances. We merely find that the Defendants, by submitting and trying the case on the ultimate coverage issue, cannot now assert that they are entitled to a defense by the insurer.

■ By their strategy throughout this case, the Defendants have waived any right to a defense by the insurer. In the statement of issues and legal theories in their pretrial memorandum, the Defendants stated that for the trial court to rule on the legal issues, there would need to be only a brief factual presentation on the legal issue of whether coverage was afforded under the policy for Michael Kyes and his parents. Similarly, the parties submitted the following as "issues and legal theories" in their proposed pretrial order:

> This is a declaratory judgment action, presenting an insurance coverage issue; namely does the policy issued by the plaintiff provide coverage to Gerald Kyes, Violet Kyes, and/or Michael Kyes with respect to liability arising out of a shooting incident which occurred on August 29, 1978?

The Superior Court entered the proposed pretrial order. Any pretrial order, when entered by the court, controls the subsequent course of the action unless it is modified at trial to prevent injustice. M.R. Civ.P. 16(c)(3). The rule also provides that any objections to the contents of the pretrial order shall be filed within ten days of the date on which the pretrial order is mailed to counsel.

The Defendants offered no objections whatsoever to the ultimate coverage issue being the focus of the declaratory judgment action. Moreover, the Defendants *tried* the case on the ultimate coverage issue: all of the evidence that the Defendants offered at trial was directed toward the question of coverage, *not* toward the existence of a duty to defend. Only in their reply brief did the Defendants belat-

edly argue that if the trial court erred in simultaneously determining the duty to defend and the duty to indemnify (and the Defendants submit that this was a proper case for simultaneous determination), the Defendants are, at a minimum, entitled to a defense by the insurer. Nonetheless, whatever an application of the comparison test might reveal, the Defendant cannot now ask us to apply that test. By submitting and trying this case solely on the ultimate coverage issue, the Defendants have waived any opportunity for a court to determine whether or not the insurer has a duty to defend the Kyeses in the pending personal injury action instituted by the Gilberts.

Having determined that the Superior Court did not err in simultaneously determining the duty to defend and the duty to indemnify, we move on to the question of whether that court erred in concluding that the policy does not provide coverage to the Kyeses. We find no error in the Superior Court's declaration.

■ Whether the language of a contract is ambiguous is a question of law for the court. *Hare v. Lumbermens Mutual Casualty Company*, 471 A.2d 1041, 1044 (Me.1984). Contract language is ambiguous when it is reasonably susceptible of different interpretations. *Id.* Although here the presiding justice did not specifically make a finding on whether he found the language of this policy to be ambiguous, it is clear from his reliance on the policy's definition of "persons insured" that he found the language to be unambiguous. We agree. The definition of "persons insured" as an "individual" is expressly limited to the person insured or spouse of the named insured, *"but only with* respect to conduct of a business ...." (emphasis supplied). Gerald and Violet Kyes were insureds under the "individual" and "other" designations. The checked designation of "other" is simply not applicable to this factual situation. The paragraph labelled "Coverage C," upon which the Defendants have relied, is by its very wording limited

in application to the provision of liability insurance to those who are insured. Thus, the presiding justice correctly determined that the policy provides the Kyeses with liability coverage only with respect to the conduct of their motel business and their grocery business.[3]

■ The presiding justice also found as a fact that Steven Gilbert's injuries were not sustained with respect to the conduct of the Kyeses' motel business. Factual findings of trial courts will be overturned on review only if they are clearly erroneous. M.R.Civ.P. 52(a). A trial court's factual determinations are not clearly erroneous if they are supported by any credible evidence in the record. *Harmon v. Emerson*, 425 A.2d 978, 981 (Me.1981).

■ After a careful review of the record we conclude that it contains ample evidence to support the presiding justice's finding that the shooting accident was not business-related. Although the shooting occurred in a private residence that was also used for business purposes, Stephen Gilbert was there only as a social guest. Further, nothing in the record indicates that Michael Kyes was at the time, nor had he been, engaged in *any* business activity during the twenty-four hour period preceding the accident. We therefore find no error in the presiding justice's ruling that the Plaintiff insurance company has no duty to defend or indemnify the Kyes Defendants.

The entry will be:

Judgment affirmed.

All concurring.

---

**3.** We do not feel compelled to address the issue of whether the presiding justice improperly relied on the existence of other insurance coverage purchased by the Kyeses because it does not appear from the record that the presiding justice based his decision on anything other than language of the policy.