# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
March 5, 2013 Session

## TENNESSEE FARMERS MUTUAL INSURANCE COMPANY v. W. PHILLIP REED, ET AL.

### Appeal from the Chancery Court for Blount County
No. 2011-113      Telford E. Forgety, Chancellor

### No. E2012-01392-COA-R3-CV-FILED-JUNE 10, 2013

Tennessee Farmers Mutual Insurance Company ("Tennessee Farmers") sued W. Phillip Reed, Personal Representative of the Estate of Carol LaRue; Rufus Everett; Delight Everett; and Lilla Farner seeking a declaratory judgment with regard to rights and obligations under a commercial general liability insurance policy. Tennessee Farmers filed a motion for summary judgment. After a hearing the Trial Court entered its order on June 12, 2012 granting Tennessee Farmers summary judgment after finding and holding, *inter alia*, that the insurance policy was not ambiguous, that the phrase "property damage" in the insurance policy did not include the type of loss allegedly suffered by the Everetts and Ms. Farner, and that the commercial general liability insurance policy provides no coverage to W. Phillip Reed as Personal Representative of the Estate of Carol LaRue for the claims filed by the Everetts and Ms. Farner. Rufus Everett, Delight Everett, and Lilla Farner ("Defendants") appeal to this Court. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY, and THOMAS R. FRIERSON, II, JJ., joined.

David T. Black, Melanie E. Davis, and Andrew S. Trundle, Maryville, Tennessee, for the appellants, Rufus Everett, Delight Everett, and Lilla Farner.

John T. Johnson, Jr., and Brandon L. Morrow, Knoxville, Tennessee, for the appellee, Tennessee Farmers Mutual Insurance Company.

## OPINION

## Background

In 2008, Tennessee Farmers issued a commercial general liability insurance policy ("the Policy") to Carol J. LaRue d/b/a Financial Resource Center. This policy was renewed annually through July of 2010. As pertinent to the case now before us on appeal, Section V of the Policy provides that property damage is defined as:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

In June of 2011, Defendants sued W. Phillip Reed, as Personal Representative of the Estate of Carol LaRue[1], and Chris LaRue for negligence alleging, in part, that Carol LaRue had breached a fiduciary duty to Defendants "in rendering financial advice, financial management, and her negligent failure to disclose the risk involved in the investments she controlled and made for [Defendants]." Defendants alleged, among other things, that Ms. LaRue had advised them to invest in promissory notes, which ultimately became worthless causing Defendants to suffer financial damages.

In September of 2011, Tennessee Farmers filed this suit seeking a declaration of rights and obligations under the Policy with regard to the suit Defendants filed against W. Phillip Reed and Chris LaRue. Tennessee Farmers filed a motion for summary judgment claiming the policy provided "no coverage for nor any duty to defend the civil action filed [by Defendants against W. Phillip Reed and Chris LaRue]." After a hearing, the Trial Court entered its order on June 12, 2012 granting Tennessee Farmers summary judgment after finding and holding, *inter alia*:

3. Carol LaRue was a financial and investment consultant in Blount County, and she purchased a commercial general liability insurance policy from Tennessee Farmers.

4. The policy issued by Tennessee Farmers to Carol LaRue contained a provision which stated that, "We will pay those sums that an insured becomes

---

[1]Carol J. LaRue died in August of 2010.

legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The subject policy further provides that, "This insurance applies to 'bodily injury' or 'property damage' only if the 'bodily injury' or 'property damage' is caused by an 'occurrence.'" An "occurrence" is defined in the policy as an "accident."

5. According to the allegations in the civil action filed by [Defendants], against the Estate of Carol LaRue, upon the advice of Carol LaRue, the [Defendants] invested substantial sums of money in loans to Medical Capital Holding and AIC. According to the allegations made by [Defendants], the investments were not secure and no payments were made on the notes by Medical Capital Holding or AIC to [Defendants]. [Defendants] have alleged that Carol LaRue was negligent in advising them to invest their money in such a manner.

6. Tennessee Farmers takes the position that the policy at issue is a commercial general liability policy and that it is not an errors and omissions policy. Tennessee Farmers further takes the position that the claim of [Defendants] is not one for bodily injury or for property damage. Tennessee Farmers also contends there has not been an "occurrence" as defined by the policy.

7. The Court finds that the losses sustained by the [Defendants] were not property damage as defined by the policy. The Court finds that the [Defendants] made investments which lost value when it turned out that the makers of the promissory note could not pay.

8. The Court finds that the policy is not ambiguous and that the common understanding of the phrase "property damage" does not include the type of loss allegedly suffered by the [Defendants].

9. The Court finds that the loss sustained by the [Defendants] is the type of loss that would typically be covered under an errors and omissions policy rather than a commercial general liability policy.

* * *

Based upon the above findings of fact, the Court finds as a matter of law that the losses sustained by the [Defendants] are neither bodily injury nor property damage and that the commercial general liability insurance policy

issued to Carol LaRue provides no coverage to W. Phillip Reed, Administrator Ad Litem and/or Personal Representative of the Estate of Carol LaRue, for the claims filed against him by the [Defendants].

Defendants appeal.

## **Discussion**

Although not stated exactly as such, Defendants raise one issue on appeal: whether the Trial Court erred in granting Tennessee Farmers summary judgment after finding that the losses allegedly sustained by Defendants were not property damage as defined in the Policy.

"Issues regarding an insurer's duty to defend are matters of law and may be resolved by summary judgment when there are no genuine issues as to any material fact." *Travelers Indemnity Co. of America v. Moore & Assocs., Inc.*, 216 S.W.3d 302, 305 (Tenn. 2007). Our Supreme Court reiterated the standard of review in summary judgment cases as follows:

> The scope of review of a grant of summary judgment is well established. Because our inquiry involves a question of law, no presumption of correctness attaches to the judgment, and our task is to review the record to determine whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Cent. S.*, 816 S.W.2d 741, 744 (Tenn. 1991).

> A summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). The party seeking the summary judgment has the ultimate burden of persuasion "that there are no disputed, material facts creating a genuine issue for trial . . . and that he is entitled to judgment as a matter of law." *Id*. at 215. If that motion is properly supported, the burden to establish a genuine issue of material fact shifts to the non-moving party. In order to shift the burden, the movant must either affirmatively negate an essential element of the nonmovant's claim or demonstrate that the nonmoving party cannot establish an essential element of his case. *Id*. at 215 n.5; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008). "[C]onclusory assertion[s]" are not sufficient to shift the burden to the non-moving party. *Byrd*, 847 S.W.2d at 215; *see also Blanchard v. Kellum*, 975 S.W.2d 522, 525 (Tenn. 1998). Our state does not

-4-

apply the federal standard for summary judgment. The standard established in *McCarley v. West Quality Food Service*, 960 S.W.2d 585, 588 (Tenn. 1998), sets out, in the words of one authority, "a reasonable, predictable summary judgment jurisprudence for our state." Judy M. Cornett, *The Legacy of Byrd v. Hall: Gossiping About Summary Judgment in Tennessee*, 69 Tenn. L. Rev. 175, 220 (2001).

Courts must view the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). In making that assessment, this Court must discard all countervailing evidence. *Byrd*, 847 S.W.2d at 210-11. Recently, this Court confirmed these principles in *Hannan*.

*Giggers v. Memphis Housing Authority*, 277 S.W.3d 359, 363-64 (Tenn. 2009). We review "a trial court's interpretation of contract language de novo with no presumption of correctness." *Travelers Indemnity Co. v. Moore*, 215 S.W.3d at 305.

Before we begin our analysis of the issue raised by Defendants, we note that after hearing oral argument in this case, we sua sponte ordered the parties to file supplemental briefs on the issue of whether a specific endorsement to the Policy applied in this case. The endorsement ("the Endorsement") to the Policy provides, in pertinent part:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service.

The description of professional services contained in the Endorsement includes "FINANCIAL PLANNING & INVESTMENT."

The parties briefed this issue and Defendants asserted that Tennessee Farmers had waived the issue of whether the Endorsement applied by failing to raise this issue in the Trial Court or even in this Court. We agree. As our Supreme Court has instructed:

[T]he basic principles of waiver, includ[e] "the long-standing rule in Tennessee that *any* contractual provision of a policy of insurance, whether part of an insuring, exclusionary, or forfeiture clause, may be waived by the acts, representations, or knowledge of the insurer's agent." *Bill Brown Constr. Co.*

-5-

*v. Glens Falls Ins. Co.*, 818 S.W.2d 1, 13 (Tenn. 1991) (emphasis in original); *see also Rutherford v. Tennessee Farmers Mut. Ins. Co.*, 608 S.W.2d 843, 846 (Tenn. 1980). Indeed, this Court has specifically stated that

> [a] waiver is a voluntary relinquishment by a party of a known right .... "[I]t may be proved by express declaration; or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage; or by a course of acts and conduct ...."

*Chattem, Inc. v. Provident Life & Accident Ins. Co.*, 676 S.W.2d 953, 955 (Tenn. 1984) (quoting *Baird v. Fidelity-Phenix Fire Ins. Co.*, 178 Tenn. 653, 162 S.W.2d 384, 389 (Tenn. 1942)).

*Gaston v. Tennessee Farmers Mut. Ins. Co.*, 120 S.W.3d 815, 819 (Tenn. 2003).

Although it appears from the record before us that the Endorsement might well have been controlling in the case now before us on appeal, we hold that Tennessee Farmers waived this issue, and we, therefore, will not consider it.

We turn now to the issue raised by Defendants regarding whether the Trial Court erred in granting Tennessee Farmers summary judgment after finding that the losses allegedly sustained by Defendants were not property damage as defined in the Policy. As our Supreme Court has stated:

> We previously have held that whether a duty to defend arises depends solely on the allegations contained in the underlying complaint. *St. Paul Fire & Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 835 (Tenn. 1994) (quoting *Am. Policyholders' Ins. Co. v. Cumberland Cold Storage Co.*, 373 A.2d 247, 249 (Me. 1977)). Accordingly, the insurer has a duty to defend when the underlying complaint alleges damages that are within the risk covered by the insurance contract and for which there is a potential basis for recovery. *Id*.

*Travelers Indemnity Co. v. Moore*, 216 S.W.3d 216 at 305.

A careful and thorough review of the complaint in the suit filed by Defendants against W. Phillip Reed and Chris LaRue reveals that, as pertinent to the issue now before us, Defendants allege that Ms. LaRue:

> violated her fiduciary duty to [Defendants] by either a failure to properly investigate the liquidity of Medical Capital Holding and AIC, the entities to

which she brokered the loans; or by failing to advise [Defendants] of the substantial risks of the recommended investments thereby proximately resulting in the total loss of the [Defendants'] investments.... AIC and Medical Capital Holding have defaulted on the Notes. Each obligor on the Notes is believed to be in bankruptcy or in a receivership and consequently, the [Defendants] have sustained the loss of their life savings.

Defendants argue in their brief on appeal that the promissory notes at issue are tangible property and assert that they have suffered property damage as a result of Ms. LaRue's negligence. Defendants concede that they do not claim to have suffered damages as a result of physical injury to tangible property. Instead, Defendants argue that they suffered damages as a result of a loss of use of tangible property. The phrase "loss of use" is not defined in the Policy.

In their brief on appeal, Defendants argue that this case is analogous to *Marlin Financial & Leasing Corp. v. Nationwide Mut. Ins. Co.*, 157 S.W.3d 796 (Tenn. Ct. App. 2004).[2] In *Marlin Financial* this Court examined an insurance policy that, like the case now before us, used the phrase 'loss of use,' but did not provide a definition for this phrase. *Id*. In *Marlin Financial* we stated:

Since the policy does not define the concept of "loss of use," we must give those words their "usual, natural and ordinary meaning." *See Swanson*, 692 S.W.2d at 419. To aid us in this task, we turn to the dictionary. *See Am. Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 815 (Tenn. 2000); *Tata*, 848 S.W.2d at 653. The word "use" is defined as "[t]o put into service or apply for a purpose." *The American Heritage College Dictionary* 1486 (3d ed. 2000). "Loss" is defined as "[t]he condition of being deprived … of something." *Id*. at 801. Thus, as applied to the policy language before us and considering the operative facts, it appears that, given the ordinary meaning of these words, "loss of use" means the deprivation of the ability to put the boat racks, the missing floating dock, and the dry storage building into service or apply them for a purpose.

Nationwide strenuously contends that it did not intend to cover "economic loss;" but it can point to no language in the policy spelling this out. We recognize one could argue that "loss of use" is a vague term and hence somewhat ambiguous. This does not help Nationwide. As the author of the

---

[2]Puzzlingly, although Defendants rely heavily upon *Marlin Financial* in their brief on appeal, Tennessee Farmers fails even to mention this case in its brief on appeal.

policy, Nationwide had it within its power to define loss of use in a way that would exclude "economic loss." It failed to do so. Thus, any ambiguity must be construed against Nationwide and in favor of Marlin, provided there is a reasonable interpretation of the "loss of use" language which would provide coverage for AmSouth's loss. *See Allstate*, 896 S.W.2d at 571.

The lease is very clear. Once Island Cove filed for bankruptcy, AmSouth had the right to take physical possession of all of the subject property. In other words, according to the dictionary, it had the right to possess the property and "put [it] into service" or "apply [it] for a purpose." While it was required to do certain things with the property in order to mitigate its damages, this does not change the fact that it had the right to use the property, *i.e.*, the right to sell it or "lease, otherwise dispose of or keep idle all or part of the" property under discussion. It lost that right, at least as to some of the property, because of the negligence of Marlin.

Thus, there is a reasonable interpretation of the policy that would cover AmSouth's loss. Since the insurance company chose not to define the somewhat-vague term of "loss of use," that failure is construed against Nationwide and in favor of an interpretation of the policy favorable to Marlin.

*Id*. at 809-10.

The analysis of the phrase "loss of use" contained in *Marlin Financial* is helpful to our analysis in this case. The factual situation in *Marlin Financial*, however, is distinguishable from the facts in the case now before us, which is critical to our analysis in this case. In *Marlin Financial* the tangible property at issue consisted of boat racks, a dry storage building, and a floating dock,[3] which, as we noted in *Marlin Financial*, AmSouth *lost the right to use*. *Id*. at 810. As we stated in *Marlin Financial*: "it matters not, under the language of the policy before us, *how* AmSouth was going to *use* the property; what matters is that it had a *right to use* property and that right was lost due to Marlin's negligence." *Id*. at 811 (emphasis in original).

In the case now before us, Defendants argue in their brief on appeal that the promissory notes constitute tangible property, which they lost the right to use. The allegations in the complaint Defendants filed against W. Phillip Reed and Chris LaRue,

---

[3]In *Marlin Financial* we noted that the insurance company argued that because the floating dock had not been built it could not be considered tangible property, but stated that even so, the boat racks and the dry storage building did constitute tangible property. *Marlin Financial*, 157 S.W.3d at 809.

however, do not allege a loss of use of the promissory notes. Rather, Defendants allege that they lost their *investment*. What Defendants actually are alleging is a loss of value, not a loss of use. Loss of use and loss of investment or value, however, are two very different concepts. Defendants still have the right to use the promissory notes even though that use may result in nothing of value to Defendants because their investment lost its value. The fact that the promissory notes no longer have the same value as they did when Defendants invested in them does not mean that Defendants are prevented from 'using' the promissory notes. While Defendants attempt to equate loss of use with loss of investment or value, they are not the same. Defendants did not lose the use of the promissory notes but rather the promissory notes simply declined in value.

What Defendants actually are arguing is that they suffered an economic loss, *i.e.*, their loss of investment or value, due to Ms. LaRue's alleged negligence. As this Court noted in *Standard Fire Ins. Co. v. Chester-O'Donley & Assocs., Inc.*, however, "general liability policies are not intended to cover the insured's contractual liability for economic loss because its work was not that for which the damaged person bargained." *Standard Fire Ins. Co. v. Chester-O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 7 (Tenn. Ct. App. 1998).

Whether "a duty to defend arises depends solely on the allegations contained in the underlying complaint." *Travelers Indemnity Co. v. Moore*, 216 S.W.3d at 305. A careful and thorough review of the underlying complaint in this case reveals that Defendants have not "allege[d] damages that are within the risk covered by the insurance contract and for which there is a potential basis for recovery."[4] *Id*. There are no genuine disputed issues of material fact, and Tennessee Farmers is entitled to judgment as a matter of law. As such, we find no error in the Trial Court's grant of summary judgment to Tennessee Farmers, and we affirm the Trial Court's June 12, 2012 order.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the appellants, Rufus Everett, Delight Everett, and Lilla Farner, and their surety.

_____

D. MICHAEL SWINEY, JUDGE

_____

[4]Given our determination that Defendants have failed to allege damages within the risk covered by the Policy, we need not address whether the promissory notes are, or are not, tangible property under the Policy.